# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW RICHARDSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 10-4024 |
| SELECTIVE INSURANCE COMPANY OF AMERICA, | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                   MAY 31, 2011

Presently before the Court is a Motion for Summary Judgment filed by Plaintiff Andrew Richardson ("Richardson"), and a Motion for Summary Judgment filed by Defendant Selective Insurance Company ("Selective"). For the following reasons, Richardson's Motion will be denied, and Selective's Motion will be granted.

## I.   BACKGROUND

Richardson brought this action for declaratory relief pursuant to Pennsylvania's Declaratory Judgment Act, 42 Pa.C.S.A., §7531 et seq. against Selective. Richardson seeks a declaration of coverage for underinsured motorist ("UIM") benefits due him for injuries sustained in an accident pursuant to a commercial automobile policy[1] (the "Policy") issued by Selective to his employer, Manheim Township. (Pl.'s Mot. Summ. J. at 1-2.)

---

[1] Selective Policy of Insurance No. S 1390367. This Policy provides a $1,000,000 limit for UIM benefit claims, and Richardson seeks the limits of this coverage. (Def.'s Mot. Summ. J., Ex. H.)

On April 18, 2009, Richardson was struck by an underinsured motor vehicle[2] while walking as a pedestrian across the intersection of Route 455 and Sipe Avenue in Hershey, Pennsylvania. Richardson was employed as a Township Manager for West Manheim Township (the "Township"). (Richardson Dep. at 10-11.) On this date, as part of his employment with the Township, Richardson traveled to Hershey to attend a conference to be held on April 19, 2009 at the Hershey Lodge (the "Lodge"). (Id. at 30-31.) Richardson was driving a 1999 Jeep owned and insured by the Township. (Id. 19, 22-25.)

Richardson arrived in Hershey at approximately 7:00 p.m., and checked into the Best Western Hotel. (Id. at 32-33.) A short time later, Richardson walked from his room to Fuddruckers, a local restaurant, to eat dinner. The restaurant was located on Route 422 across from the Best Western Motel, but on the same side as the Lodge. (Id. at 32.) After dinner, Richardson walked back to his hotel room to put warmer clothing on, and he decided to walk to the Lodge to check out conference times for the next day. (Id. at 34.) While attempting to cross Route 422 on foot, Richardson was struck by the underinsured vehicle. Richardson testified that he was not in, getting into, or getting out of the Township Jeep at the time of the accident. (Id. at 41.) He also testified that he had no intention of getting into his car and/or driving anywhere upon returning from the Lodge. (Id. at 40.) As a result of the accident, Richardson suffered injuries to his pelvis, left leg, right arm, as well as some internal injuries and head injuries. (Id. at 40.)

Moreover, as a result of the accident, Richardson received $25,000 of benefits from the

---

[2]Section 1702 of the Motor Vehicle Financial Responsibility Law defines "underinsured motor vehicle" as "A motor vehicle which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S.A. § 1702.

insurance company of the driver who struck him, approximately $300,000 in UIM benefits from his personal insurer, Geico Insurance Company, and approximately $200,000 in workers compensation benefits from the Township's workers compensation carrier. (Id. at 20-22.) In addition, the workers compensation carrier will continue to pay medical bills until June 2011. (Id. at 22.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond

the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

## III. DISCUSSION

### A. "Occupying" the Vehicle

Under the Policy, in order to qualify for UIM benefits, Richardson must demonstrate that he is an "insured." Under the UIM policy language, anyone "occupying" a covered motor vehicle is an insured.[3] (See Def.'s Mot. Summ. J., Ex. I.) There is no dispute here that the 1999

---

[3]The Policy states:

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

a. An individual, then the following are "insureds":

**i.** The Named Insured and any "family members".

**ii.** Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing "loss" or destruction.

**iii.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

**b.** A partnership, limited liability company, corporation or any

4

Jeep that Richardson drove to Hershey was a covered "motor vehicle" under the policy. Selective asserts that Richardson is not an "insured" under the Policy because he was not "occupying" the vehicle at the time of the accident. We agree.

The principles that govern this Court's interpretation of an insurance contract under Pennsylvania law are well settled. "The goal is to ascertain the intent of the parties as manifested by the language of the written instrument." Alleman v. State Farm Life Ins. Co., 508 F. Supp. 2d 452, 455 (W.D. Pa. 2007). Interpretation of an insurance policy is a question of law. Westport Ins. Corp. v. Bayer, 284 F.3d 489, 496 (3d Cir .2002).

In construing the policy, if the words of the policy are clear and unambiguous, the court must give them their plain and ordinary meaning. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005). When a term is ambiguous, and the intention of the parties cannot be discerned from the policy, the court may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract. Id. Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist. Id.

---

> other form of organization, then the following are "insureds":
>
> **i.** Anyone "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
> **ii.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

(Def.'s Mot. Summ. J., Ex. I.)

Based on this case law, this Court is charged with the responsibility of interpreting Richardson's insurance contract at issue, and must give all clear and unambiguous terms in the contract their plain and ordinary meaning without torturing the language of the contract to create ambiguities where none exist.  See Sikirica, 416 F.3d at 220.

Under Pennsylvania law, interpretation of the word "occupying" in motor vehicle insurance policies "focuses upon whether the person claiming benefits was performing an act (or acts) which is (are) normally associated with the immediate 'use' of the auto."  Utica Mut. Ins. Co. v. Constriciane, 473 A.2d 1005, 1009 (Pa. 1984).  The Utica court held that "when a person is engaged in the lawful use of an insured vehicle, he will be considered to be 'occupying' that vehicle within the meaning of the policy" when the following four factors are met:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
>
> (2) the person asserting coverage [was] in a reasonably close geographic proximity to the insured vehicle, although the person need not actually be touching it;
>
> (3) the person [was] vehicle oriented rather than highway or sidewalk oriented at the time [of injury]; and
>
> (4) the person [was] engaged in a transaction essential to the use of the vehicle at the time.

Utica, 473 A.2d at 1009.  The Utica court emphasized that a liberal interpretation of the term "occupying," is required in light of the public policy underlying Pennsylvania's Uninsured Motorist Act.[4]  Id.  In determining that the plaintiff in Utica met these four factors and was

---

[4] Utica explicitly adopted a "liberal interpretation" of "occupying."  473 A.2d at 1009.  In doing so, the court noted that this approach was more consistent with Pennsylvania's Uninsured Motorist Act, which was designed to protect individuals who were lawfully using the highways

"occupying" his vehicle at the time of his accident, the court stated:

> Turning to the facts of this case there is no question that the decedent was "occupying" the Utica insured vehicle at the time of the accident. Decedent was lawfully in possession of the Future Cars vehicle at the time of the accident. Once involved in the accident with Ms. Killen he was required by law to stop his vehicle and exchange information with Ms. Killen. See 75 Pa.C.S.A. §§ 3743; 3744. Thereafter he was directed by the officer to bring the information up to the police car. During this time decedent's fiance remained in the car, obviously anticipating the continuance of their journey. At all times decedent was engaged in transactions essential to his continued use of the vehicle, and it was only because of the mandated requirements of the statute and the police officer that decedent found himself physically out of contact with his vehicle. Finally, it was the use of the vehicle which precipitated the whole unfortunate series of events.

Id.

In Selective Ins. Co. of America v. Jaskoloka, the court considered the Utica factors and found that a township employee who was struck and killed by an automobile while working on a highway clearing brush alongside the road and loading it into a township dump truck was "occupying" the truck, for purposes of determining her estate's eligibility for UIM benefits under the township's insurance policy. The court indicated that the employee was crushed against the truck while loading it, and found her lawfully in possession of the truck at the time of the accident because the truck was running, and her actions in loading brush were essential to the use of the truck at the time of the accident. 292 F. Supp. 2d 624 (M.D. Pa. 2003)

Here, Richardson's own testimony supports Selective's position that he does not meet any of the criteria of Utica in order to be determined to be "occupying" the 1999 Jeep, and consequently, not entitled to UIM benefits under the Policy. As to the first criterion, there is no

---

and who suffered grave injuries through the negligent use of the highways by others. Id.

causal relation or connection between the accident and the use of the insured vehicle. Richardson's testimony indicated that he stopped driving the vehicle hours prior to the accident. Richardson testified that after checking into his hotel he walked to a local restaurant for dinner. After eating, he returned to his room to put on warmer clothing, and intended to then walk over to the Lodge across Route 422. (Richardson Dep. at 32-34.) Richardson testified that he was not in, getting into, or getting out of the Jeep at the time of the accident. (Id. at 41.) In fact, he doesn't assert that it was ever a consideration to drive the vehicle over to the Lodge, and testified that he had no intention of getting into his car and/or driving anywhere upon returning from the Lodge. (Id. at 40.)

Richardson also cannot meet Utica's second criterion because he was not in a reasonably close geographic proximity to the insured vehicle. As Richardson testified, he had much earlier parked the vehicle in the Best Western Hotel parking lot, and that he was nowhere near it when he was struck crossing Route 422. (Id. at 33.) As noted above, while the decedent in Utica was close to a hundred feet from his car when he was struck by another car, the court only found him to be "physically out of contact" with his vehicle because a police officer requested that he stay by the police patrol car. 473 A.2d at 1009.

Furthermore, it is apparent that Richardson cannot meet the third and fourth criteria as well. Richardson was clearly highway oriented and not vehicle oriented when the accident occurred. Pennsylvania courts have found individuals to be "vehicle oriented" in a range of situations. See Fisher v. Harleysville, 621 A.2d 158, 160 (Pa. Super. 1993), appeal denied, 637 A.2d 285 (Pa. 1993) (holding that the individual was "vehicle oriented" because he was unloading his gun in preparation to enter a truck); Frain v. Keystone Insurance Co., 640 A.2d

8

1352, 1357 (Pa. Super. 1994) (holding that the individual was "vehicle oriented at the time of the accident because she was in the process of entering the vehicle in order to make the return trip home"); Shultz v. Nationwide Ins. Co., 541 A.2d 391, 393 (Pa. Super. 1988) (holding that individual was "vehicle oriented" because she "was engaged in refueling her vehicle by pouring gasoline into the tank.") Here, Richardson was clearly not "vehicle oriented" at the time of his accident. He was in the process of walking across Route 422 when he was struck and was in no way engaged in activity directed toward or in the preparation of entering his vehicle. See Utica, 473 A.2d at 1009. Furthermore, Richardson was not engaged in a "transaction essential to the use of the vehicle at the time" because by his own admission he walked over to the Lodge when he was struck, and does not assert that he ever intended to drive. (Richardson Dep. at 31.) Because Richardson does not meet any of the four criterions of Utica, we find that he was not "occupying" his vehicle at the time of his accident and, thus, not entitled to UIM benefits under the Policy.

**B.  Pennsylvania's Motor Vehicle Financial Responsibility Law**

In his Motion, Richardson, in fact, does not argue that he was "occupying" the vehicle, and that he somehow meets the criteria of Utica.[5] Rather, Richardson asserts that the Policy violates 75 Pa.C.S.A. §1731(a) and (c)[6] of Pennsylvania's Motor Vehicle Financial

---

[5]In fact, in his Response to Selective's Motion for Summary Judgment, Richardson admits that he was "not occupying the 1999 Jeep at the time of the accident." (Pl.'s Resp. Mot. Summ. J., p. 6 at 34.)

[6]The Motor Vehicle Financial Responsibility Law ("MVFRL") provides:

> (A) Mandatory offering.- No motor vehicle liability insurance policy shall be delivered or issued for delivery in this

Responsibility Law ("MVFRL"), which requires insurers to provide UIM coverage. This argument, however, is clearly without merit.

Pennsylvania courts have held that there is nothing in Pennsylvania public policy which prohibits an insurer from issuing a policy which insures a company's vehicles, but restricts the extent of an employee's coverage to when he/she is operating one of those vehicles. See Caron v. Reliance Ins. Co., 703 A.2d 63, 69 (Pa. Super. 1997). In State Farm Ins. Co. v. Taylor, the Third Circuit stated that "A review of Pennsylvania cases, as well as federal cases interpreting Pennsylvania law, reveals that there is no prohibition on an insurer's limiting the UIM coverage on corporate-owned vehicles to the occupant(s) of those vehicles." 116 Fed. Appx. 350, 352 (3d Cir. 2004); See also United States Fidelity and Guaranty v. Tierney Associates, Inc., 213 F. Supp. 2d 468 (M.D. Pa. 2002).

Moreover, the case law relied on by Richardson is misplaced. For example, Richardson

---

> Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.
>
> * * * *
>
> (c) Underinsured motorist coverage.- Undersinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles.

75 Pa.C.S.A. § 1731 (a), (c).

cites Kmonk-Sullivan v. State Farm Mutual Automobile Insurance Co., 788 A.2d 955 (Pa. 2001), in support of his assertion that the Policy should be voided because it attempts to narrow the scope of UIM coverage in violation of 75 Pa.C.S.A. §1731(c). Kmonk-Sullivan involved insurance carriers that refused to pay UIM benefits to policyholders injured by government vehicles because the policies explicitly excluded governmental vehicles from the definition of an underinsured vehicle. The court held that the insurers' government vehicle exclusions were in conflict with the provisions of the MVFRL, and coverage was permitted. Id. Here, however, the policy before us does not attempt to narrow the definition of an underinsured motor vehicle, but rather, restricts the extent of an employee's coverage to when he/she is operating one of those vehicles. See Caron, 703 A.2d at 69.

Accordingly, for these reasons, Richardson's Motion for Summary Judgment is denied, and Selective's Motion for Summary Judgment is granted.[7]

An appropriate Order follows.

---

[7] In an alternative argument for summary judgment, Selective asserts that Richardson is not a "named insured' under the Policy. The named insured set forth on the Policy declaration sheet is listed as "West Manheim Township & Supervisors, West Manheim York County Sewer Authority & West Manheim York County Water Authority." (See Def.'s Mot. Summ. J., Ex. F.) Selective asserts that Richardson was employed as a Township Manager at West Manheim Township and was not a "supervisor," and thus, not a "named insured" under the Policy. Richardson testified that there are five elected supervisors in the Township and that his position is a paid one and that his responsibilities as Township Manger is to carry out the policies established by this board of supervisors. (Richardson Dep. at 9-10.) Although it seems clear from the facts here that Richardson drove a Township vehicle to the conference in Hershey that he was attending as part of his duties as Township Manager, and thus, was intended by the Township to be covered by its insurance, we need not address this issue as we have determined that Richardson is not covered under the Policy because he was not 'occupying" the vehicle as the time of his accident.